1
2

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

JAN 1 1 2016

3   **ANGELO ARENA,**
4           **Plaintiff,**
5   v.
6   **TOWN OF PENFIELD, ELYSE VOIGT,**
7   **and KERRY EGERTON,**
8           **Defendants.**

**CASE NO. 16-CV-06002**

9                         **FIRST AMENDED COMPLAINT**

10         Plaintiff, Angelo Arena ("Mr. Arena"), alleges and complains against defendants Town of

11  Penfield, Elyse Voigt ("Ms. Voigt"), and Kerry Egerton ("Ms. Egerton"), as follows:

12  **I.        INTRODUCTION**

13         1.        Plaintiff Mr. Arena brings this action as a result of defendants' illegal decision to

14  deny Mr. Arena access to his own public records and the subsequent threats made by defendants

15  against Mr. Arena for pursuing his public records.

16  **II.       RELEVANT LAW**

17         **A.       The First Amendment of the United States Constitution**

18         2.        The United States Supreme Court has consistently recognized that the public and

19  press have a presumptive First Amendment right of access to judicial proceedings in criminal

20  cases. Additionally, the Second Circuit has not only consistently upheld that the First Amendment

21  right includes the right to access criminal records, but has also expanded the First Amendment

22  right to include access well beyond to scope of this litigation.[1]

23         3.        The right to petition government for redress of grievances, inherent in the First

24  Amendment, is the right to make a complaint to, or seek the assistance of, one's government,

---

[1] For example, the Second Circuit has incorporated within the First Amendment the right to access
records in civil proceedings, which includes access to transcripts and the docket, among other
documents.

1    without fear of punishment or reprisals. The right to petition allows citizens to focus government

2    attention on unresolved ills; provide information to elected leaders about unpopular policies;

3    expose misconduct, waste, corruption, and incompetence; and vent popular frustrations without

4    endangering the public order.

5        4.       The First Amendment is incorporated against all states through the Fourteenth

6    Amendment of the United States Constitution.

7        **B.      42 U.S.C. § 1983**

8        5.       Congress enacted 42 U.S.C. § 1983 to ensure that every citizen of the United States

9    is entitled to recover in a civil action for the deprivation of "any rights, privileges, or immunities

10   secured by the Constitution and laws," when any person "under color of any statute, ordinance,

11   regulation, custom, or usage" violates such inalienable rights, privileges, or immunities.

12       **C.      42 U.S.C. § 1985**

13       6.       Congress enacted 42 U.S.C. § 1985 to ensure that every citizen of the United States

14   is entitled to recover in a civil action when two or more persons conspire to interfere with a

15   citizen's civil rights.

16       **D.      New York Judiciary Law § 255**

17       7.       The New York State Legislature, taking into account that every citizen has a

18   Constitutionally protected First Amendment right to access court records, enacted New York

19   Judiciary Law § 255, an unambiguous statute, which demands the following:

20       A clerk of a court **must**, upon request, and upon payment of, or offer to pay, the
21       fees allowed by law, or, if no fees are expressly allowed by law, fees at the rate
22       allowed to a county clerk for a similar service, diligently search the files, papers,
23       records, and dockets in office; and either make one or more transcripts or
24       certificates of change therefrom, and certify to the correctness thereof, and to the
25       search, or certify that a document or paper, of which the custody legally belongs
26       him, can not be found. (emphasis added)

27       **E.      New York Uniform Justice Court Act § 2019**

8.     This section mandates that "legible and suitable records and dockets of all criminal actions and proceedings" be maintained.

F.     **New York Uniform Justice Court Act § 2019(a)**

9.     This section requires that "the records and dockets of the court … shall be at reasonable times open for inspection to the public and **shall be and remain the property of the village or town of the residence of such justice.**" (emphasis added)

G.     **New York Uniform Justice Court Act § 2103**

10.    State law vests in localities themselves the day-to-day supervision, budgeting, and control of Justice Courts. An example of a state law that vests such power in the localities is this section, which states:

> The administrative board may adopt, amend and rescind rules for the courts governed by this act, not inconsistent with this act or with the CPLR. A copy of the rules shall be available at all times in the office of the clerk of each court governed by this act, and shall be published as directed by the administrative board.

Consistent with the home rule powers that towns possess, towns have substantial discretion and flexibility in how they discharge these responsibilities.

H.     **New York Uniform Justice Court Act § 2001(2)**

11.    Regarding criminal matters in *town courts*, this statute unambiguously states that "the practice and procedure in the court shall be governed by the criminal procedure law." This is also consistent with New York Criminal Procedure Law ("CPL") 10.10, which defines a "town court" as a "criminal court" for the purposes of the CPL. Further, the CPL specifically mandates specific records be maintained from the proceedings. See CPL § 220.50 and CPL § 340.20, for example. § 2001(2) was enacted on September 1st, 1967.

I.     **New York Uniform Justice Court Act § 109**

12.    The governing town board of each Justice Court's sponsoring town or village

1    determines the employees or non-judicial officers the court has. Specifically, the law states:

2    Each court shall have such non-judicial personnel as may be provided by the
3    municipal board. Their powers and duties in addition to those provided by this act,
4    shall be as provided in the rules.

5    **J.    22 New York Codes, Rules, and Regulations § 214.11(a)**

6    13.   This law states:

7    Each Town and Village Justice Court shall maintain:
8    (1) case files containing all papers filed, orders issued, any minutes or notes
9    made by the court of proceedings or testimony, and a copy of any original
10   documents or papers forwarded to another court or agency;
11   (2) an index of cases with a unique number assigned to each case when filed;
12   and
13   (3) a cashbook which shall chronologically itemize all receipts and
14   disbursements.

15   **K.    22 New York Codes, Rules, and Regulations § 214.6**

16   14.   This law specifically established the unambiguous powers of the court clerk in a

17   *town court.* The law states:

18   The court clerk and one of the deputy or assistant court clerks designated by the
19   clerk are authorized and empowered to administer oaths, take acknowledgments,
20   sign the process or mandate of the court and **certify the records of the court.**"
21   (emphasis added)

22   **L.    New York Town Law § 69**

23   15.   This law states:

24   Each town board shall provide for each justice of the peace such statutes,
25   manuals, books, forms and supplies as may be necessary for the proper
26   administration of his office. The expenses incurred in complying with the
27   foregoing provisions shall be a town charge within the meaning of this
28   chapter.

29   **M.    New York Criminal Procedure Law § 60.60(1)**

30   16.   The law states:

31   A certificate issued by a criminal court, or the clerk thereof, certifying that
32   a judgment of conviction against a designated defendant has been entered
33   in such court, constitutes presumptive evidence of the facts stated in such

1                      certificate.

2  **III.**    **JURISDICTION AND VENUE**

3           17.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331,

4  1332, and 1343.

5           18.     This Court has supplemental jurisdiction over all other claims that are so related to

6  the claims in this action pursuant to 28 U.S.C. § 1367(a).

7           19.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b)(1),

8  (b)(2), (c) & (d), because defendants transact significant business within this district and therefore

9  are subject to personal jurisdiction in this district and because a substantial part of the events giving

10  rise to the claims alleged occurred in this district.

11  **IV.**    **PARTIES**

12          20.     Plaintiff Angelo Arena is a natural-born citizen of the United States of America and

13  a resident of the State of New Jersey.

14          21.     Defendant Town of Penfield was, and is, a municipal corporation authorized under

15  the laws of the State of New York and county of Monroe. As a result of the Town of Penfield being

16  a town, under New York law, the town is responsible for the hiring, training, supervising of non-

17  judicial staff in Penfield Town Court. All court records created in the Penfield Town Court are the

18  property of the Town of Penfield. At all relevant times, the Town of Penfield was and is acting

19  under the color of state law for purposes of 42 U.S.C. § 1983. As a result of all court records

20  created in the Penfield Town Court being the property of the Town of Penfield pursuant to New

21  York State law, the Town of Penfield is the public body responsible for ensuring that such records

22  remain open to the public as required by the First Amendment of the United States Constitution,

23  N.Y. Jud. Law § 255, and N.Y. UJCA § 2019(a).

24          22.     Defendant Elyse Voigt is, and at all times relevant herein, a court clerk employed

1    by the Town of Penfield. At all relevant times, defendant Ms. Voigt was and is a person acting
2    under the color of state law for purposes of 42 U.S.C. § 1983. Relief is sought against defendant
3    Ms. Voigt in her official and individual capacities.

4        23.    Defendant Kerry Egerton is, and at all times relevant herein, a court clerk employed
5    by the Town of Penfield. At all relevant times, defendant Ms. Egerton was and is a person acting
6    under the color of state law for purposes of 42 U.S.C. § 1983. Relief is sought against defendant
7    Ms. Egerton in her official and individual capacities.

8    **V.    BACKGROUND**

9        24.    In June 2015, Mr. Arena conducted a public records search on himself and to his
10   surprise came across an outstanding Judgment for $250.00, dated January 07, 2007, and issued by
11   the Penfield Town Court. Mr. Arena was accused of minor traffic violations and other violations
12   as a youth, which were adjudicated in the Penfield Town Court. Mr. Arena's records indicate that
13   the accusations were disposed of through dismissal and sealed.

14       25.    Mr. Arena contacted the Penfield Town Court to inquire into the matter. In doing
15   so, Mr. Arena explained to the court clerk[2] that there is an outstanding judgment and asked if there
16   was a specific records request form the court preferred Mr. Arena to use in requesting the records
17   from the cases. The court clerk told Mr. Arena that she "didn't know" and would need to contact
18   Mr. Arena at a later time regarding his inquiry into *if there is a specific form the court preferred*
19   *him to use for a records request.*[3] Mr. Arena also asked for all case numbers, but was told that such
20   information could not be disclosed. Mr. Arena's records indicated a total of five matters
21   adjudicated before the Penfield Town Court and at the time, he possessed three of the case

---

[2] Between June 2015 and November 2015, Mr. Arena spoke directly with both defendants, Ms.
Voigt and Ms. Egerton, interchangeably regarding all matters related to this Complaint.
[3] The answer to this question should have been common knowledge to the court clerk.

1    numbers.

2        26.    Mr. Arena contacted the court clerk's office on a weekly basis for a month

3    regarding his inquiry into if there was a specific form the court preferred him to use when

4    submitting a records request and was continuously told by defendants Ms. Voigt and Ms. Egerton

5    that they would need to call him back because they "don't know" and are "busy."

6        27.    After a month of not receiving an answer to his simple question, on July 15, 2015,

7    Mr. Arena mailed a records request to the Penfield Town Court in compliance with N.Y. Jud law

8    § 255 (Exhibit A). The records request was sent via certified mail and signed for by defendant Ms.

9    Voigt.

10       28.    On July 15, 2015, Mr. Arena also conducted a Freedom of Information Law

11   ("FOIL") request on himself in New York. Within 30 days, Mr. Arena received exactly what he

12   had requested without incident.

13       29.    On August 03, 2015, Mr. Arena contacted the Penfield Town Court to inquire into

14   the costs of producing the records requested and if the cost needed to be paid in advance. The

15   conversation was anything but normal. Defendant Ms. Voigt demanded Mr. Arena pay $350.00

16   and that his records request was not sufficient because the payment was not made to the court yet

17   and the court had no way of knowing who was making the request. Mr. Arena followed up via

18   facsimile, which stated in part:

19           After my conversation with you today, there appears to be confusion as to
20       my rights to access and obtain public records under the law. Further, there appears
21       to be confusion as to your role in producing such records under the law.

22       (Mr. Arena then outlines the law, which is omitted here).

23           In light of this, and contrary to your comments, the judge should not play a
24       role in the production of such records and using the excuse that you "don't know"
25       and it is the "judge's court" are not viable excuses for failure to comply with one
26       of my most fundamental rights under the law. It is the "peoples court" and that is
27       what makes America great.

Complaint                              - 7 -                   Arena v. Town of Penfield, et al.

1         I simply contacted you to inquire into when I should receive notification of
2 the costs associated with my request and I was surprised by what I was told. I was
3 caught off guard by your stonewalling and demands for fees that it isn't clear that I
4 even owe and that seem to continue to grow each time I call the court. Further, I
5 offered to have my signature notarized after your comments that you didn't know
6 that I am who I say I am, yet you continued to say, "I don't know." This is
7 unacceptable and a notarized signature is sufficient indication under the law to
8 demonstrate that I am who I say I am.

9     30.     Mr. Arena received a letter dated August 04, 2015 (received on August 09, 2015)

10 from John Lomenzo ("Mr. Lomenzo"), town court judge in the Town of Penfield. In part, the letter

11 stated:

12     **Before I will consider your application** you need to appear before a notary
13 public.[4] . . . Normally we would have someone who appears at the **court clerk's**
14 **office** with a request such as yours provide proof to ensure that we know for certain
15 to whom we are releasing documents.[5] (emphasis added)

16     31.     On August 10, 2015, Mr. Arena had the records request that the court sent to Mr.

17 Arena notarized, which was identical to the records request dated July 15, 2015, and mailed it to

18 the Penfield Town Court (Exhibit B). The records request was sent via certified mail and signed

19 for by defendant Ms. Egerton. This was an undue burden placed upon Mr. Arena, as Mr. Arena's

20 initial request was a legal request for public records.

21     32.     On August 18, 2015, Mr. Arena received two telephone calls from Mr. Lomenzo.[6]

---

[4] A public records request is not an "application" before a judge, which would define it as a motion. A public records request can never be "considered." The records are either public and produced or statutorily non-public and a "no record found" letter is mailed instead.

[5] This establishes the existence of a policy and custom among the court clerks of violating the rights of individuals seeking access to court records. Public court records, of which anyone has a right to access, do not require the requestor to have their signature notarized, nor produce identification upon such a request. This is a deterrent and the records that were sent to Mr. Arena could be requested by anyone, as they are public record pursuant to the First Amendment of the United States Constitution and New York State law.

[6] Production of records pursuant to a public records request is a function of the court clerk and it does not require a motion upon the court. Therefore, it is completely unacceptable that Mr. Arena was contacted by Mr. Lomenzo to be questioned regarding his public records request.

1    Mr. Lomenzo demanded that Mr. Arena send payment of $250.00 and that "in return" Mr. Arena

2    would receive his records requested. Although Mr. Arena was uncomfortable with paying anything

3    prior to having the opportunity to review all records, it was obvious that Mr. Arena's options were

4    either (1) file suit for the release of the records or (2) pay the $250.00 in confidence that the court

5    was telling the truth about releasing all records after his payment.

6        33.    On August 18, 2015, Mr. Arena mailed a money order for $250.00 (Exhibit C). The

7    money order was sent via certified mail and signed for by defendant Ms. Voigt.

8        34.    On September 10, 2015, Mr. Arena received two Case History Reports and two

9    Information's (the equivalent to a Complaint). The Case History Reports are not official court

10   documents (they appear to be screen shots and are not signed or certified under the court seal).

11   Further, the Case History Reports do not state how the cases were disposed, other than there was

12   a fee.[7]

13       35.    Mr. Arena immediately contacted the Penfield Town Court and requested (1)

14   Certificates of Dispositions for all cases,[8] (2) transcripts for all cases, (3) all records for the two

15   cases that Mr. Arena received no records for, and (4) all other records, such as depositions, written

16   statements pursuant to CPL § 220.50 and CPL § 340.20, etc.

17       36.    Over the next two months, Mr. Arena would call the Penfield Town Court once a

---

[7] The manner in which a case is disposed of is extremely detrimental to a citizen's ability to either seal their record under New York law or, alternatively, communicate the record to prospective employers, for example. Mr. Arena is entitled to know exactly how the cases were disposed of.
[8] According to the New York State Unified Court System, a Certificate of Disposition is "an official court document that indicates the current status of a case or its final disposition." The 6th Judicial District of New York defines a Certificate of Disposition as "an official court document affixed with the Court Seal that indicates the disposition of the case." A Certificate of Disposition is signed by the court clerk and certified with the court seal. A Certificate of Disposition is **required** to be filed with the state when sealing a record in New York State.

1    week to follow up on his records request. Each time Mr. Arena contacted the court, Mr. Arena was
2    given excuses such as "we have trial this week" and even "you are not a priority." Mr. Arena was
3    told by both defendant court clerks that they would "get to it by next week," yet every week this
4    never happened.

5        37.    On October 26, 2015, Mr. Arena was told for the first time that because of the date
6    of the tape recordings of the court proceedings, Mr. Arena would need to contact an outside
7    transcriber to transcribe the records. Mr. Arena was specifically told to contact Pamela Alexander
8    ("Ms. Alexander") because "she has the technology to transcribe the tapes that were used" for Mr.
9    Arena's cases. Mr. Arena was told by the court that he could only have two cases transcribed at a
10   time, so Mr. Arena chose the two that he most desired. Further, Mr. Arena was provided with the
11   remaining two case numbers, but told that he again needed to have another records request
12   notarized because one of the cases was sealed.[9] Mr. Arena was asked to state in the records request
13   that he gives the court permission to unseal the record to make copies of the record.

14       38.    On October 28, 2015, Mr. Arena mailed another notarized records request (Exhibit
15   D).

16       39.    Mr. Arena immediately contacted Ms. Alexander and provided her with all
17   information that she requested to complete the transcription of the court proceedings. She stated
18   that she communicated with the court via email and should have the tapes "within a few days."

19       40.    Mr. Arena continued to follow up with the defendants Ms. Voigt and Ms. Egerton
20   regarding the records request and providing Ms. Alexander with the tapes to be transcribed. On
21   November 12, 2015, Mr. Arena had a conversation with Ms. Voigt, who stated that she was going

---

[9] These records were obviously requested in the initial request, which was notarized.

1    to mail all records requested that day and would provide Ms. Alexander with the tapes by the end

2    of the day.

3    41.    Mr. Arena contacted Ms. Alexander on November 13, 2015 and Ms. Alexander

4    stated that she was "just at the court" and that the clerks said that she would have the tapes no later

5    than the following Monday, November 16, 2015. Mr. Arena contacted Ms. Voigt on November

6    18, 2015 to inquire into the status of the tapes, as Ms. Alexander had yet to be provided with them.

7    Mr. Arena was again given excuses and it further came to light that none of the documents that

8    Ms. Voigt stated were mailed on November 12, 2015 were actually mailed. Mr. Arena expressed

9    that this records request needed to come to an end and that nothing is actually being done, which

10    translates into Mr. Arena being denied access to his records. Ms. Voigt stated that she would mail

11    the documents and locate the tapes for Ms. Alexander on November 18, 2015.

12    42.    Instead of waiting another week, Mr. Arena contacted Ms. Voigt on November 19,

13    2015 to ensure that the records were actually mailed and to ensure that the tapes were going to be

14    provided to Ms. Alexander. Unfortunately, Ms. Voigt didn't like that Mr. Arena contacted her the

15    following day, as her normal routine of excuses wouldn't work. Instead, this time Mr. Arena was

16    told that he "needed to go before the judge" to say why he needed the records. Mr. Arena asked

17    why Ms. Voigt didn't simply mail the records and provide Ms. Alexander with the tapes, both as

18    required by law. Mr. Arena was hung up on.

19    43.    Mr. Arena immediately called the Penfield Town Court again, this time speaking

20    to Ms. Egerton. The conversation was as follows:

21        Ms. Egerton:  Penfield Town Court
22        Mr. Arena:     How are you doing, is this Elyse?
23        Ms. Egerton:  Nope, this is Kerry. Can I help you?
24        Mr. Arena:     Yes, Kerry, I'd like to speak to Elyse please.
25        Ms. Egerton:  Um, may I ask who's calling?
26        Mr. Arena:     Sure, my name is Angelo Arena.

| | | |
|---|---|---|
| 1 | Ms. Egerton: | Ok, Mr. Arena she already let you know that judge Lomenzo will… |
| 2 | Mr. Arena: | No, Mam, she just hung up on me. |
| 3 | Ms. Egerton: | **I know**. |
| 4 | Mr. Arena: | No, you don't hang up on people. |
| 5 | Ms. Egerton: | Mr. Angelo you are being really rude |
| 6 | Mr. Arena: | I'm being rude by asking for documents? (chuckling) |
| 7 | Ms. Egerton: | **If you continue to call us we will…** |
| 8 | Mr. Arena: | What are you going to do? |
| 9 | Ms. Egerton: | **We are going to make other arrangements.** |
| 10 | Mr. Arena: | I would like to know exactly when I am going to receive my documents that |
| 11 | | I requested. |
| 12 | Ms. Egerton: | Judge Lomenzo will let you know. Do not call us back. He will call you. Is |
| 13 | | there an understanding? |
| 14 | Mr. Arena: | No, I have a right to call you and follow up. Okay, I have recorded |
| 15 | | conversations with all of these calls and now you are threatening me and |
| 16 | | you have no legal authority to threaten me. |
| 17 | Ms. Egerton: | What you are doing is being rude to us and **we don't have to put up with** |
| 18 | | **it**. |
| 19 | Mr. Arena: | No I am not; I am calling to follow up. |
| 20 | Ms. Egerton: | Do not call us back. Judge Lomenzo will call you. |
| 21 | Mr. Arena: | I am the only one here that is having their rights violated. (Ms. Egerton hung |
| 22 | | up while Mr. Arena was speaking). (emphasis added) |

23    The issue is made clear here: defendants categorize a citizen requesting public records and

24 asking that defendants actually perform their duties under the law as "rude" and therefore, believe

25 they can silence Mr. Arena with threats and avoid ever fulfilling their duties under the law. This

26 conduct is grossly in violation of Mr. Arena's rights and a disease to the fundamental principles of

27 our Nation.

28    44.    Mr. Arena immediately contacted the Office of Court Administration in Albany,

29 New York. Mr. Arena was provided with the contact information for the Rochester office. After

30 contacting the office, Mr. Arena was contacted by Amy Monachino ("Ms. Monachino"), who

31 introduced herself as the town and village court liaison. Mr. Arena explained the situation to Ms.

32 Monachino and that he felt the court clerks were intentionally denying his right to have access to

33 the records through a series of excuses, which were nothing more than lies, through undue burdens,

34 and now through threats. Ms. Alexander made statements to Mr. Arena that included "the court

1    clerks know what you are requesting" and "they need to provide [Ms. Alexander] the tapes."

2       45.    Mr. Arena then received a voicemail from Mr. Lomenzo, which in part stated:

3      Both of my court clerks indicate that you have been nasty on the phone. I'm telling
4      you right now, do not call the court clerks office for anything.... Under no
5      circumstances are you to call my court clerks again.

6       Mr. Arena assumes this was defendants' version of "making other arrangements."

7    Defendants attempt to defame Mr. Arena's character as their version of "making other

8    arrangements" is nothing more than an attempt to silence Mr. Arena to deny him from gaining

9    access to his public records. It is highly inappropriate for a judge to leave a threatening voicemail

10   for anyone, let alone someone who is seeking court records. It should be noted that Mr. Lomenzo

11   was the town judge presiding over the matters that involved Mr. Arena as a youth. As a result of

12   Mr. Lomenzo's egregious actions, it is presumed that Mr. Lomenzo is hiding something. Mr. Arena

13   has done everything required of him by law and contacted the Office of Court Administration after

14   the court clerks hung up on him. The world would agree that Mr. Arena handled the situation as a

15   model citizen, while defendants and a *judge* (who Mr. Arena never contacted), were looking for a

16   fight and to exert power that they don't possess.

17      46.    On November 19, 2015, Mr. Arena wrote a letter to Mr. Lomenzo, which stated in

18   part:

19          I write to you today *in response* to the disturbing and unnecessary escalation
20      of abusive tactics by Elyse ... and Kerry, whom have all decided to aggressively
21      and angrily harass, abuse, threaten, and attempt to intimidate me as a result of my
22      desire to exercise my Constitutional rights. Further, their slander against my good
23      name is outrageous and must stop immediately. ... Your approach here is wholly
24      wrong. You should have called me to apologize for the inappropriate manner in
25      which I have been treated and for the unnecessary five-month delay. Instead, your
26      response was filled with anger and nothing shy of inappropriate. ...I have every
27      right to contact any court, including the Penfield Town Court, for a lawful purpose.
28      ...You see, I have done everything correct. I mailed multiple notarized letters as
29      requested. I contacted the transcription analyst as requested. ...
30
31          In closing, Mr. Lomenzo, let me be clear: Don't contact me again. You see,

1    I have no business with you. It is not "your court" and as the statute and subsequent
2    case law outlines, the duty is on the court clerk. I am not intimidated by a man that
3    finds it self-fulfilling to abuse his power and be coercive to ones most fundamental
4    rights. And society will only shame the actions of you and Elyse. I was always
5    taught that to judge a man's character, give him power. The outcome here is
6    unfortunate, as you have chosen to abuse your power. ...

8         This is America. We are a nation of laws. You especially, nor anyone else,
9    will degrade my belief in this nor block me from enjoying all rights provided to me
10   under the U.S. Constitution and state law. The reason for your noncompliance with
11   the law is beyond me. I suppose you are hiding something. ... This entire situation
12   is completely unacceptable on many levels.

13   47.    On November 23, 2015, Mr. Arena followed up with Ms. Alexander via letter,

14   which stated in part:

15        Thank you for your continued effort to assist in resolving what I believe is
16   a simple matter. To follow up from our conversation this afternoon, I'd prefer that
17   Mr. Lomenzo not contact me, as my experiences thus far guide my instincts to
18   believe that the Penfield Town Court is maliciously looking for an excuse not to
19   provide me with the requested documentation and I don't want to allow such
20   thoughts to be further entertained. Also, this is a function of a court clerk. ... I don't
21   want to make myself vulnerable to an abuse of power and have this simple matter
22   become something that it isn't. I simply want the court to fulfill my records request,
23   which is clearly written, cognizable, and in accordance with New York State law.
24   Further, I have satisfied the requests of the court and mailed a total of three requests
25   for the same documents, two of which were notarized. It was no doubt a burden to
26   have me complete extra requests that are redundant. To then not fulfill them is
27   outrageous. There is something malicious occurring and I want to avoid any and all
28   interaction with the Penfield Town Court like the plague. ... Again, I am willing to
29   pay for any and all costs with the production of such documents, as I indicated on
30   all records requests.

31   48.    On November 27, 2015, Mr. Arena received a letter from Mr. Lomenzo, which

32   stated in part:

33        Had you uttered the same words in your letter in open court before me I
34   would have had the power to and I would have, after demanding an apology and an
35   appropriate warning about the consequences of your refusal to do so, held you in
36   contempt of court and imposed either a fine or incarcerated you.

37   Mr. Arena's letter, of which he stands by every word of and most of which is transcribed

38   above, was rightly critical of the egregious and illegal manner in which he was being treated, yet

1   it was professional. In the tyrannical world that defendants and Mr. Lomenzo think America is a
2   part of, Mr. Arena is "rude" for following up on a records request and subject to "incarceration"
3   for defending himself after receiving an unsolicited telephone call and subsequent voicemail from
4   an elected official. Mr. Arena would have otherwise needed to remain silent after being attacked
5   on his personal telephone, which is such a dark governmental structure that the founding principles
6   of the United States of America destroyed at its creation centuries ago. The fact is that if **anyone**
7   calls a civilian's telephone, especially coming from a publically elected official, that civilian has
8   every right to respond, especially when threatened. Also, and most importantly, inherent in the
9   First Amendment of the United States Constitution, Mr. Arena has the right to petition government
10   for redress of grievances. This includes the right to make a complaint without fear of punishment
11   or reprisals. Mr. Lomenzo, has now reached deeper into the abyss of tyranny to threaten Mr. Arena
12   with incarceration. Defendants and Mr. Lomenzo thinks that they are running a dictatorship, but
13   they are not and their desire for power that they clearly do not possess is clearly void in the United
14   States of America. Also, Mr. Arena isn't in "open court." Mr. Arena has no business with the
15   Penfield Town Court and although Mr. Lomenzo thinks he can interrogate people for requesting
16   public records and demand people to appear before him at his desire, his letter was completely
17   inappropriate, unnecessary, and only served the purpose to further threaten Mr. Arena and attempt
18   to intimidate Mr. Arena. This was clearly retaliation for Mr. Arena contacting the Office of Court
19   Administration. Further, defendants and Mr. Lomenzo should know that nobody is immune for
20   criminal prosecution. Such threats to intimidate Mr. Arena from realizing his Constitutionally
21   protected rights are in violation of New York Uniform Justice Court Act § 2019(a),[10] but more

---

[10] Any such justice who shall willfully fail to make and enter in such records and docket forthwith, the entries by this section required to be made or to exhibit such records and docket when reasonably required, or present his records and docket to the auditing board as herein required,

1   importantly, defendants Ms. Voigt and Ms. Egerton, along with Mr. Lomenzo, are in violation of

2   18 U.S.C. § 241, which states:

3       If two or more persons conspire to injure, oppress, threaten, or intimidate any
4       person in any State, Territory, Commonwealth, Possession, or District in the free
5       exercise or enjoyment of any right or privilege secured to him by the Constitution
6       or laws of the United States, or because of his having so exercised the same; or

7       If two or more persons go in disguise on the highway, or on the premises of another,
8       with intent to prevent or hinder his free exercise or enjoyment of any right or
9       privilege so secured—

10      They shall be fined under this title or imprisoned not more than ten years, or both;
11      and if death results from the acts committed in violation of this section or if such
12      acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an
13      attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined
14      under this title or imprisoned for any term of years or for life, or both, or may be
15      sentenced to death.

16      49.    On November 27, 2015, as a result of the clearly malicious desires of defendants

17  and Mr. Lomenzo, Mr. Arena, desiring not to make himself vulnerable to such abuses of power,

18  advised Ms. Monachino and the Penfield Town Court via letter that Mr. Arena would be ceasing

19  all communication with them. The letter stated in part:

20          Again, and to clarify with exact certainty, if I do not receive the records and
21      certificates of dispositions requested on or before December 19, 2015 and if Ms.
22      Alexander is not provided with all tapes on or before December 19, 2015, I will
23      immediately commence suit in Federal Court. ... Also, I am in receipt of John
24      Lomenzo's letter dated November 21, 2015, which is inappropriate to say the least.
25      I will not even acknowledge such unfortunate desires on behalf of an elected
26      official, but if it continues, I will contact the FBI. John Lomenzo is engaged in the
27      most egregious abuses of power to attempt to prevent me from receiving my
28      records. ... I am a law abiding citizen and Ms. Voigt and Ms. Egerton are the only
29      parties violating any law. ... John Lomenzo should be immediately and indefinitely
30      censored by the State of New York for his illegal and egregious conduct.

31      50.    On December 08, 2015, after following up with Ms. Alexander to inquire if she had

---

shall be guilty of a misdemeanor and shall, upon conviction, in addition to the punishment provided
by law for a misdemeanor, forfeit his office.

1   received the tapes, Ms. Alexander informed Mr. Arena that the court clerks told her that the tapes
2   don't exist. This was shocking, as the court clerks specifically told Mr. Arena to contact Ms.
3   Alexander on October 28, 2015 (over a month prior) because she had the technology for the tapes
4   of Mr. Arena's cases.

5       51.    On December 08, 2015, Mr. Arena advised Ms. Monachino and the Penfield Town
6   Court via facsimile that, pursuant to N.Y. Jud law § 255, if the position of the court clerks is that
7   the records now "do not exist," the court clerk needed to certify in written format that such records
8   do not exist.[11] Mr. Arena never received any records or certification that such records do not exist.

9       52.    Denying access to public records is a promulgated policy on behalf of the court
10  clerks. There is clearly a policy and custom, considering all court clerks participate in the egregious
11  denial of access to public records. The Town of Penfield has utterly failed to train, supervise, and
12  adequately screen their employees. The Town of Penfield, the public body that is in legal
13  possession of the court records (See New York Uniform Justice Court Act § 2019(a)), had a duty
14  to create policies for records requests in accordance with federal and state law, but utterly failed
15  to do so, which only created the current circumstances.

16      53.    Mr. Arena maintains in his possession audio recordings of telephone conversations
17  and voicemails. Mr. Arena maintains in his possession the written documents sent and received.

18      54.    Mr. Arena has come to realize that a few of these court matters are appearing on
19  background checks, which is alarming, as the cases were supposed to be dismissed and sealed.
20  Although this isn't a question for this Court, it presents the severity of defendants malicious actions
21  in denying Mr. Arena access to all records so that he can better understand what is occurring and

---

[11] Certification that no transcripts exist is critical for evidentiary purposes, if not more important
than the actual transcripts in the black hole that exists here. N.Y. Jud law § 255 requires a court
clerk to certify if records do not exist.

1    freely express himself in pursuit of justice. For example, if these cases were not actually dismissed,
2    which appears to be the case considering some are appearing in background checks (they obviously
3    weren't sealed), Mr. Arena intends to file a Motion to Vacate pursuant to N.Y. C.P.L. § 440. This
4    is not possible without the records requested and, coupled with defendants' illegal threats to deny
5    Mr. Arena access to the Penfield Town Court, Mr. Arena's access to justice is being denied. Mr.
6    Arena is entitled to access the Penfield Town Court without the threat of malicious prosecution.

7        55.    Consistent with the United States Constitution and New York State law, Mr. Arena
8    desired to have the records requested mailed to him after making his first request. The fulfillment
9    of records requests is not optional, nor can a request be arbitrarily "considered." It is an undeniable
10   right to all citizens and the core of what makes our democracy transparent in the pursuit of a more
11   perfect union. Attempts on behalf of public officials to intimidate and threaten citizens is a disease
12   to the very foundation of the United States and corruption must be rooted out in our pursuit of a
13   more perfect union. History has never treated tyrants with any respect or honor, nor will history
14   ever do so. Such tyrants are always shunned upon. Yet, the people that protect and expand the
15   rights of the defenseless are always looked upon honorably and such people are the ones that have
16   guided us as a people to the freedoms that we possess today and are the ones that are going to
17   secure our freedoms for years to come. Such people look tyrants square on and always choose
18   freedom over giving in to the threats, no matter what the cost. Such honorable people, not the
19   tyrants, built this very country and secured the very freedoms we enjoy today.

20       56.    The circumstances outlined herein have caused great agony for Mr. Arena.

21   **VI.    CLAIMS FOR RELIEF**

22       **A.    Violation of the First Amendment to the United States Constitution**

23       57.    Plaintiff incorporates the allegations contained in paragraphs 1 - 56 above.

1        58.    By denying Mr. Arena access to public records, defendants have violated Mr.

2   Arena's First Amendment right. Further, as a result of Mr. Arena's inability to petition the Penfield

3   Town Court for redress of grievances without threats, Mr. Arena's First Amendment right has been

4   violated.

5        **B.**    **Violation of the Fourteenth Amendment to the United States Constitution**

6        59.    Plaintiff incorporates the allegations contained in paragraphs 1 - 56 above.

7        60.    Defendants threats against Mr. Arena, coupled with the subsequent threat from Mr.

8   Lomenzo, creates a high risk of the erroneous deprivation of Mr. Arena's rights and although such

9   threats are unconstitutional on their face, by making such threats, defendants have deprived Mr.

10   Arena of a meaningful opportunity to be heard, whereby the defendants have contravened the

11   Fourteenth Amendment's guarantee of procedural due process.

12        **C.**    **Violation of Access to Public Records**

13        61.    Plaintiff incorporates the allegations contained in paragraphs 1 - 56 above.

14        62.    The defendants' failure to release Mr. Arena's own public records absent an

15   applicable exemption (to be clear, no exemptions exist for one's request of their own

16   personal records) has violated the United States Constitution, New York Judiciary Law §

17   255, and New York Uniform Justice Court Act § 2019(a).

18   **VII.**   **PRAYER FOR RELIEF**

19        WHEREFORE, plaintiff Angelo Arena prays for relief against defendants as follows:

20        A.    Declare that the defendants have violated Mr. Arena's First and Fourteenth

21   Amendment rights;

22        B.    Declare that the illegal threats made against Mr. Arena by defendants are a nullity

23   and that Mr. Arena can contact the Penfield Town Court without threats of malicious prosecution.

1       C.      Enjoin the defendants from denying Mr. Arena access to any and all aspects of the

2   Penfield Town Court that are permissible by law.

3       D.      Enjoin the defendants from making any further threats against Mr. Arena.

4       E.      Enjoin the defendants from continuing to withhold the information requested by

5   Mr. Arena and mandate defendants to promptly make a copy of any and all records and Certificates

6   of Disposition requested by Mr. Arena and mail the said records and Certificates of Disposition to

7   Mr. Arena via certified mail. Alternatively, if such records "do not exist," mandate defendants to

8   certify that such records do not exist and mail to the Mr. Arena such certification via certified mail.

9       F.      Order the defendants to pay compensatory damages to Mr. Arena resulting from

10   defendants' unlawful behavior in an amount that this Court deems just and proper, but for no less

11   than \$250,000.00.

12       G.      Order the defendants to reimburse Mr. Arena the costs of prosecuting this action.

13       H.      Order all other relief that this Court deems just and proper.

14

15   Dated: January 08, 2016               Respectfully submitted,

16

17

18                           ANGELO ARENA

19                           Address:     PO Box 3800
20                                         Jersey City, New Jersey 07303

21                           Email:       16cv06002@gmail.com

22                           Telephone:  201.744.5335